UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:26-CV-00020-GNS

JENNIFER JOHNSON PLAINTIFF

v.

AMEDISYS HOLDING LLC et al. DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motions to Dismiss (DN 10, 12), and Defendant's Motion to Strike (DN 22). The motions are ripe for adjudication. For the reasons below, the motions to dismiss are **GRANTED**, and the motion to strike is **DENIED AS MOOT**.

## I. BACKGROUND

This action arises from an offer of employment made by Defendant Amedisys Holding LLC ("Amedisys") to Plaintiff Jennifer Johnson ("Johnson"), which was later terminated by Defendant Pennant Services, Inc. ("Pennant") prior to the planned start date. Johnson alleges that on September 3, 2025, Amedisys extended to her an "offer letter" for the position of "Director of Operations" with a planned start date of October 13, 2025. (Compl. ¶¶ 10-11, DN 1-1). The role was to pay $107,000 annually, with a sign-on bonus of $20,000. (Compl. ¶ 11). Johnson allegedly accepted this offer on September 4, 2025, and gave notice to her then-current employer, Village Caregiving. (Compl. ¶¶ 9, 12). On October 3, 2025, Johnson was contacted by an employee of Pennant, who informed her that "her job offer with Amedisys was being rescinded." (Compl. ¶¶ 13-14). Shortly beforehand, Pennant had apparently acquired the Amedisys facility where Johnson was to have been employed.[1]

[1] While the Complaint neither alleges an acquisition nor otherwise explains how Johnson was terminated by a different company than had agreed to hire her, Amedisys and Pennant have clarified this point in their respective briefs through reference to public records. (Def.'s Mem. Supp. Mot. Dismiss 2-3, DN 10-1 [hereinafter Amedisys's Mot. Dismiss]; Def.'s Mem. Supp. Mot. Dismiss 1

Unable to return to her prior position at Village Caregiving because it had been filled, Johnson then accepted a position elsewhere with a lower salary of $75,000. (Compl. ¶¶ 15-16).

Johnson filed suit in Simpson Circuit Court (Kentucky) against Amedisys and Pennant (collectively, "Defendants"), claiming breach of contract, fraud, promissory estoppel, intentional infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing. (Compl. ¶¶ 2-3, 18-40). Amedisys removed the action to this Court. (Notice Removal 1, DN 1).[2] On March 4, 2026, Amedisys moved to dismiss all counts for failure to state a claim, and Pennant did the same on March 20, 2026. (Def.'s Mot Dismiss 1, DN 10; Def.'s Mot. Dismiss 1, DN 12). On April 10, 2026—after the time had already run to respond to Amedisys's motion—Johnson sought from the Court, and was later granted, additional time to respond to Pennant's motion. (Pl.'s Mot. Ext. Time 1, DN 14; Order, DN 15); *see* LR 7.1(c) ("Unless otherwise ordered by the Court, a party opposing a motion must file a response within 21 days of service of the motion."). On May 11, 2026, Johnson filed a "Combined Response" purportedly addressed to both Defendants' motions. (Pl.'s Resp. Defs.' Mots. Dismiss 1, DN 19). Defendants each replied, though Amedisys also moved to strike Johnson's Response as untimely as to Amedisys's motion. (Def.'s Reply Mot. Dismiss 1, DN 21; Def.'s Reply Mot. Dismiss 1, DN 23; Def.'s Mot. Strike 3, DN 22 [hereinafter Amedisys's Mot. Strike]).

---

n.2, DN 12-1 [hereinafter Pennant's Mot. Dismiss])). On October 1, 2025, The Pennant Group, Inc. acquired "certain assets" of subsidiaries of Amedisys, Inc. "related to the business of providing home health, hospice, or palliative care services through certain providers . . . ." *See* The Pennant Group, Inc., Current Report (Form 8-K) (Oct. 2, 2025) (https://www.sec.gov/Archives/edgar/data/1766400/000176640025000113/pntg-20251002.htm) [https://perma.cc/C4NF-DZ45] (last visited Oct. 9, 2026); (*see also* Def.'s Disclosure Statement 1, DN 5 (Amedisys's sole member is Amedisys, Inc.); Def.'s Disclosure Statement 1, DN 13 (Pennant's parent corporation is The Pennant Group, Inc.)). The publicly-filed Form 8-K is appropriate for judicial notice and can be considered in ruling on a motion to dismiss. *See* Fed. R. Evid. 201(b)(2); *Lim v. Hightower*, No. 24-3960, 2025 WL 2965692, at *5 (6th Cir. Oct. 21, 2025) (citation omitted) (district court ruling on motion to dismiss "properly took judicial notice" of Forms 8-K publicly filed with the SEC—courts "routinely take judicial notice of such filings" because they are "typically 'not subject to reasonable dispute'").

[2] Pennant had not yet been served at the time. (Notice Removal ¶ 5).

## II. JURISDICTION

This Court has original jurisdiction of "all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ." 28 U.S.C. § 1332(a)(1). The parties are citizens of different states. (Pl.'s Disclosure Statement 1, DN 18 (Johnson); Def.'s Disclosure Statement 2, DN 13 (Pennant); Notice Removal ¶ 10 (Amedisys)). The amount in controversy also exceeds the minimum jurisdictional limit of this Court. (Notice Removal ¶¶ 13-17).

## III. STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, a court must "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (alteration in original) (internal quotation marks omitted) (internal citation omitted) (quoting *Twombly*, 550 U.S. at 555). When reviewing a motion to dismiss, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic*

*Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

## IV. DISCUSSION

### A. Amedisys's Motion to Strike

As a threshold matter, Amedisys maintains that because Johnson's opposition brief was untimely as to Amedisys's motion, that brief should be stricken and its arguments disregarded. (Amedisys's Mot. Strike 2-3). As addressed below, even considering Johnson's arguments in her response, the Complaint fails to state a claim against either Amedisys or Pennant. Because the Defendants' arguments for dismissal are dispositive of this case, whether the untimely filing should be stricken is of no consequence. *See Demyanovich v. Cadon Plating & Coatings, LLC*, No. 10-15119, 2014 WL 7204928, at *2 n.1 (E.D. Mich. Dec. 17, 2014). Amedisys's Motion to Strike will accordingly be denied.

### B. Breach of Contract

Count I, breach of contract, fails to state a claim because Johnson has not plausibly alleged employment other than "at-will." "To recover in any action based on breach of contract under Kentucky law, the party seeking to recover must 'show the existence and the breach of a contractually imposed duty.'" *Sudamax Industria e Comercio de Cigarros, Ltda v. Buttes & Ashes, Inc.*, 516 F. Supp. 2d 841, 845 (W.D. Ky. 2007) (first quoting *Lenning v. Com. Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); and then citing *Strong v. Louisville & Nashville R.R. Co.*, 43 S.W.2d 11, 13 (Ky. 1931)). The elements of a breach of contract are: "(1) the existence of a valid contract; (2) breach of the contract; and (3) damages or loss to [the] plaintiff." *Id.* at 845.

While Johnson states in the Complaint that "at all times relevant, the Plaintiff and the Defendants had a written contract[,]" this appears to be a legal conclusion. (Compl. ¶ 19); *Iqbal*, 556 U.S. at 678-79. The factual allegations are that Amedisys sent Johnson an "offer letter" on September 3, 2025, and that she "accepted this offer . . . ." (Compl. ¶¶ 10-12). The Complaint states

that "a copy of this offer letter is attached to this complaint as Exhibit 1." (Compl. ¶ 10). Although that exhibit does not appear with the Complaint in the record, Amedisys has supplied the offer letter, dated September 3, 2025, as an attachment to its Motion to Dismiss. (Def.'s Mot. Dismiss Ex. A, at 2-3, DN 10-2 [hereinafter Offer Letter]). This "exhibit[] attached to [the] defendant's motion to dismiss" can be considered because it is "referred to in the Complaint and . . . central to the claims contained therein." *Bassett*, 528 F.3d at 430. It states, in no uncertain terms: "This offer letter is not a contract of employment and you will at all times be an *at-will employee* at Amedisys." (Offer Letter 3 (emphasis added)).

In Kentucky, "a contract for permanent employment which is not supported by any consideration other than the obligation of services to be performed on the one hand and wages to be paid on the other is a contract for an indefinite period, and, as such, is terminable at the will of either party." *Edwards v. Ky. Utils. Co.,* 150 S.W.2d 916, 917-18 (Ky. 1941) (citations omitted). "Where there is no clearly manifested intent to alter an employee's employment status from at-will to one where he could only be terminated for cause, the default employment relationship is 'at will.'" *McDonald v. Webasto Roof Sys., Inc.*, No. 11-CV-433-JMH, 2013 WL 5676223, at *5 (E.D. Ky. Oct. 18, 2013) (citing *Street v. U.S. Corrugated, Inc.*, No. 1:08-CV-00153, 2011 WL 304568, at *5 (W.D. Ky. Jan. 25, 2011)), *aff'd*, 570 F. App'x 474 (6th Cir. 2014); *see also McDonald*, 570 F. App'x at 477 ("Kentucky law presumes an at-will employment relationship 'unless the parties otherwise agree' . . . ." (citation omitted)).

Courts have found that "an agreement for at-will employment does not create an enforceable contract, and thus, a breach of contract action to enforce it will not lie." *Clemans v. Nat'l Staffing Sols., Inc.*, 459 F. Supp. 3d 842, 845 (E.D. Ky. 2019) (citing *Murton v. Android Indus.-Bowling Green, LLC*, No. 1:13-CV-00112-GNS-HBB, 2015 WL 3549817, at *5 (W.D. Ky. June 4, 2015). This is true absent an indication that the offer was *not* for "at-will" employment, since that is "the default employment relationship." *McDonald*, 2013 WL 5676223, at *5 (citation omitted) (rejecting

breach of contract claim where "no written employment contract exist[ed], nor [was] there evidence that [the plaintiff] was made or accepted an offer of employment on any terms other than 'at-will'"); *Street*, 2011 WL 304568, at *5 (same result where there a written memorandum reciting the terms of the offer, but it contained no specific provision setting terms other than "at-will"). The outcome is the same where the offer letter, as here, explicitly states that the offer is for "at-will" employment. *Murton*, 2015 WL 3549817, at *5; (Offer Letter 3). The same result also holds when the employer terminates the at-will employment agreement *before* the planned start date, as Johnson alleges occurred here. *Clemans*, 459 F. Supp. 3d at 847 (granting judgment on the pleadings to defendant employer on the plaintiff's breach of contract claim, where the agreement for at-will employment was terminated one day before the planned start date, because "[i]t would defy all logic for this Court to allow [the plaintiff] to bring a breach of contract claim for the termination of her employment agreement the day before she started working, but bar it the moment she stepped foot in the office"); *McDonald*, 2013 WL 5676223, at *1, *5 (no breach of contract where employer terminated at-will employment agreement, before the plaintiff began work, even after he had left his former employment in purported reliance on the employer's offer); (Compl. ¶¶ 11-14).

Johnson's opposition brief identifies no contrary authority applying Kentucky law, and merely cites a contract law treatise for the general proposition that "[a] contract of employment to begin at a future time is totally broken by the employer's refusal to begin such employment at that time." (Pl.'s Resp. Defs.' Mots. Dismiss 3 (quoting 4 Arthur L. Corbin, *Corbin on Contracts* § 958 (1993))). As applied to at-will employment in Kentucky, however, "the existence of an employment agreement alone does not indicate that a plaintiff might have a claim for breach of a contract for future employment; rather, the agreement must be *for more than at-will work*." *Clemans*, 459 F. Supp. 3d at 846 (emphasis added). The September 3, 2025, letter offered Johnson employment as "an at-will employee[,]" and Johnson "accepted *this* offer . . . ." (Offer Letter 3; Compl. ¶¶ 10-12 (emphasis added)). Nor are there any factual allegations outside the Offer Letter to support a

reasonable inference that the agreement was for more than at-will work. Accordingly, Pennant's pre-start-date termination of Amedisys's employment agreement with Johnson does not present a facially plausible claim for breach of contract under Kentucky law. (Compl. ¶¶ 10-12). Both Defendants' motions to dismiss will therefore be granted as to Count I, and Johnson's breach of contract claim will be dismissed without prejudice.

### C. **<u>Fraud</u>**

Count II, fraud, fails to satisfy the heightened pleading standard required by Fed. R. Civ. P. 9(b), which states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."[3] As the Sixth Circuit has explained:

> Generally Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud. More specifically, the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. Further, the complaint must describe the fraudulent scheme and the resulting injury. [G]eneral allegations that raise the mere possibility of fraud will not do; instead, the complaint must provide the factual predicates necessary to convince us that [the underlying fraud] in all likelihood occurred.

*Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 614-15 (6th Cir. 2024) (alterations in original) (internal quotation marks omitted) (internal citations omitted) (citation omitted). Johnson's Complaint falls far short of this standard, identifying no specific false representation made to her at all. Setting aside the conclusory recitations of the elements (e.g., "Defendants . . . made certain

---

[3] Amedisys also argues that the fraud claim fails for the "independent reason[]" that Kentucky law "prohibits recovery for fraud claims where the plaintiff seeks damages that are the same economic losses arising from the alleged breach of contract." (Amedisys's Mot. Dismiss 7 (citing *New London Tobacco Market, Inc. v. Ky. Fuel Corp.*, 44 F.4th 393, 413-14 (6th Cir. 2022); *Nami Res. Co. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018))). Both cases cited arose in a post-damages-award posture, and both found that the economic-loss doctrine prevented the plaintiffs—who had in each case already been made whole by compensatory damages in contract for the underlying fraudulent conduct—from recovering punitive damages for fraud when "the fraud claim is indistinguishable from the breach of contract claim . . . ." *New London*, 44 F.4th at 413-14; *Nami*, 554 S.W.3d at 335-36. Because Johnson's fraud claim is inadequately pleaded, it is unnecessary to determine whether the economic-loss doctrine also impacts, as Amedisys suggests, a plaintiff's ability to *plead* both fraud and breach of contract claims arising from the same facts.

representations to Plaintiff with regard to her employment. . . . [T]he Defendants' representations were false."), the factual allegations consist only of Amedisys offering employment, Johnson accepting, and Pennant later terminating the employment agreement. (Compl. ¶¶ 9-16, 24-27). This does not adequately allege a claim for fraud under Fed. R. Civ. P. 9(b). *Greer*, 114 F.4th at 615 (affirming dismissal of state-law fraud claims for failure to satisfy Fed. R. Civ. P. 9(b)).

The Kentucky Supreme Court's decision in *United Parcel Serv. Co. v. Rickert*, 996 S.W.2d 464 (Ky. 1999), on which Johnson relies in her opposition brief, does not alter this result. (Pl.'s Resp. Defs.' Mots. Dismiss 6-7). Johnson quotes *Rickert*'s recitation of the elements of fraud, and cites the facts proven at trial in that case, stating that *Rickert* is "still 'good law'" in Kentucky. (Pl.'s Resp. Def.'s Mots. Dismiss 6-7 (citing *Rickert*, 996 S.W.2d at 468-69)). This does nothing to cure the lack of specific factual allegations in Johnson's Complaint pertaining to fraud. *See* Fed. R. Civ. P. 9(b). Accordingly, both Defendants' motions to dismiss will be granted as to Count II, and Johnson's fraud claim will also be dismissed without prejudice.

**D. Promissory Estoppel**

Count III, promissory estoppel, fails alongside the breach of contract claim, for lack of something beyond "at-will" employment. "[T]he required elements to state a claim for promissory estoppel under Kentucky law are: '(1) a promise; (2) which the promisor should *reasonably* expect to induce action or forbearance on the part of the promisee; (3) which does induce such action or forbearance; and (4) injustice can be avoided only by enforcement of the promise.'" *Arnold v. Liberty Mut. Ins. Co.*, 392 F. Supp. 3d 747, 778 (E.D. Ky. 2019) (emphasis added) (quoting *Schlenk v. Goodwill Indus. of Ky., Inc.*, No. 3:16-CV-00601-JHM, 2016 WL 6836945, at *3 (W.D. Ky. Nov. 18, 2016)). "[R]easonable reliance is a 'key element' of promissory estoppel in Kentucky." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 216 (6th Cir. 2019) (citing *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d 636 (Ky. App. 2003)). Accordingly, "federal and state courts interpreting Kentucky law have consistently held that no prospective or current employee can

*reasonably rely* on a vague promise of employment that can be terminated at any time, for any reason." *Clemans*, 459 F. Supp. 3d at 846 (emphasis added) (citations omitted); *see Jackson v. JB Hunt Transport, Inc.*, 384 S.W.3d 177, 185 (Ky. App. 2012) (rejecting at-will employee's promissory estoppel claim grounded on alleged wrongful termination because "as an at-will employee, he had no employment security to begin with"); *McDonald*, 570 F. App'x at 477 (plaintiff's at-will status precluded his promissory estoppel claim).

Johnson's reliance on *McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10 (Ky. App. 1990), and *United Parcel Service Co. v. Rickert* is unavailing. (Pl.'s Resp. Defs.' Mots. Dismiss 3-6). In *McCarthy*, from which Johnson excerpts at great length, the Kentucky Court of Appeals reviewed the applicability of promissory estoppel in relation to a life insurance policy, finding that the defendant employer should have reasonably expected that its employees and their families would act in reliance on its representations about the policy. *McCarthy*, 796 S.W.2d at 11-12. In *Rickert*, the Kentucky Supreme Court affirmed a jury verdict for the plaintiff on his promissory estoppel claim, where evidence was presented at trial showing that the defendant had made a misleading oral promise of a future job to the plaintiff with the intent to induce him to stay on in the interim with his current employer, which provided carrier services for the defendant. *Rickert*, 996 S.W.2d at 470-71. The court found that, having proven fraud on these facts by clear and convincing evidence, the plaintiff had also put on sufficient proof to instruct the jury on promissory estoppel. *Id.* As the Sixth Circuit noted in *Bisig*, in relation to reasonable reliance, *Rickert* "merely illustrate[s] the uncontroversial principle that a plaintiff may sometimes establish reasonable reliance based on a defendant's oral representations." *Bisig*, 940 F.3d at 210-16 (applying Kentucky law and finding that plaintiff's reliance on oral promises of better pay and continued employment, which contradicted explicit written disclaimers of "at-will" status, was not reasonable, defeating both fraudulent misrepresentation and promissory estoppel claims).

Neither *McCarthy* nor *Rickert* suggests that a promise of terminable-at-will employment, without any more specific promise of job security, would support the reasonable reliance necessary to plausibly allege promissory estoppel. Courts have repeatedly found otherwise. *Clemans*, 459 F. Supp. 3d at 846; *Harris v. Burger King Corp.*, 993 F. Supp. 2d 677, 691 (W.D. Ky. 2014) ("An at-will employee can claim promissory estoppel only if she can show a specific promise of job security." (citations omitted)); *Murton*, 2015 WL 3549817, at *6 (same); *Flynn v. Intelligrated Servs., LLC*, No. 3:20-CV-00019-GFVT, 2021 WL 899082, at *5 (E.D. Ky. Mar. 8, 2021) (same); *Downs v. Bel Brands USA, Inc.*, 613 F. App'x 515, 520 (6th Cir. 2015) (same); *see also Gritton v. Amazon.com Servs. LLC*, No. 3:24-CV-261-DJH, 2025 WL 5148808, at *4 (W.D. Ky. Mar. 25, 2025) ("Gritton cannot plead reasonable reliance without a 'specific promise of job security.'" (citation omitted)); *Dorger v. Allstate Ins. Co*., No. 2:08-CV-56-DR, 2009 WL 1248989, at *7 (E.D. Ky. May 1, 2009) ("Several [out-of-state] courts have held that promissory estoppel is available to fired at-will employees, but these cases are distinguishable because they generally involve promises regarding job security.").

Because Johnson's allegations do not suggest any promise of job security beyond at-will employment, she has not stated a facially plausible claim for promissory estoppel under Kentucky law. Both defendants' motions to dismiss will be granted as to Count III and Johnson's promissory estoppel claim will also be dismissed without prejudice.

### E. Intentional Infliction of Emotional Distress

Count IV, intentional infliction of emotional distress ("IIED"), fails because it does not allege conduct sufficiently outrageous to support such a claim. A successful claim for IIED in Kentucky requires that: "(1) the wrongdoer's conduct was intentional or reckless[;] (2) the wrongdoer's conduct was outrageous and intolerable[;] (3) there is a causal connection between the conduct and the emotional distress[;] and (4) the emotional distress suffered is severe." *Benningfield v. Pettit Env't, Inc.*, 183 S.W.3d 567, 572 (Ky. App. 2005) (citation omitted). "Conduct is only actionable

under the tort of IIED if it is 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bargo v. Goodwill Indus. of Ky., Inc.*, 969 F. Supp. 2d 819, 827 (E.D. Ky. 2013) (quoting *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 788 (Ky. 2004)); Restatement (Second) of Torts § 46 cmt. d (A.L.I. 1965).

Johnson specifically bases her IIED claim on "the conduct of the Defendants in wrongfully terminating the Plaintiff . . . ." (Compl. ¶ 33). The non-conclusory factual allegations, however, amount only to the entering into of an at-will employment agreement by Amedisys, and the termination of that agreement by Pennant. (Compl. ¶¶ 10-15). This is insufficient to plausibly allege IIED, because "[m]ere termination clearly does not rise to the level of outrageous conduct required to support an IIED claim." *Benningfield*, 183 S.W.3d at 571 (affirming summary judgment for defendant employer where the plaintiff "only allege[d] his termination as grounds for his IIED claim"); *Highlands Hosp. Corp. v. Preece*, 323 S.W.3d 357, 368-69 (Ky. App. 2010) (same result even if termination was wrongful); *Robards v. BLK Out Transp.*, 623 F. Supp. 3d 810, 826 (W.D. Ky. 2022) ("Under Kentucky law, '[t]ermination from employment, even if for discriminatory reasons, is insufficient to constitute outrageous conduct sufficient to support a claim for [IIED].'" (alterations in original) (citations omitted)).

In opposition, Johnson relies on *Kroger Co. v. Willgruber*, 920 S.W.2d 61 (Ky. 1996), arguing that *Kroger* "governs the issue of the disposition of the claim of intentional infliction of emotional distress in the context of employment law and wrongful termination." (Pl.'s Resp. Defs.' Mots. Dismiss 7). This reliance is misplaced. In *Kroger*, the Kentucky Supreme Court found that the defendant employer's "post-termination conduct was [] compellingly egregious[,]" and that there was "compelling, poignant proof" that it had "engaged in a calculated attempt to coerce [the plaintiff] to sign release papers exonerating [the defendant] for its wrongful discharge" of him. *Kroger Co.*, 920 S.W.2d at 66. Johnson, on the other hand, has alleged no conduct by either Amedisys or Pennant

going beyond the formation, and later termination, of an at-will employment agreement. While *Kroger* supports that it is possible for an employee to state an IIED claim against an employer in the employment termination context when the latter engages in outrageous and intolerable conduct, *Kroger* in no way indicates that termination alone plausibly alleges such conduct. Because the factual allegations do not support a facially plausible claim of IIED, Defendants' motions to dismiss will be granted as to Count IV, and Johnson's IIED claim will also be dismissed without prejudice.

**F. Good Faith and Fair Dealing**

Count V, breach of the implied covenant of good faith and fair dealing, fails along with the breach of contract and promissory estoppel claims, because the factual allegations indicate only "at-will" employment. In general, "[e]very contract contains an implied covenant of good faith and fair dealing." *Morris v. Tyson Chicken, Inc.*, 497 F. Supp. 3d 282, 288 (W.D. Ky. 2020) (quoting *Mountain Motorsports Paving & Constr. LLC v. Yamaha Motor Corp., U.S.A.*, No. 7:14-CV-76-ART, 2014 WL 5341865, at *5 (E.D. Ky. Oct. 20, 2014)). In other words, "[i]n Kentucky, '[e]very contract carries a duty to do everything necessary to carry [it] out.'" *KSA Enters., Inc. v. Branch Banking & Tr. Co.*, 761 F. App'x 456, 460 (6th Cir. 2019) (second alteration in original) (quoting *Crestwood Farm Bloodstock, LLC v. Everest Stables, Inc.*, 864 F. Supp. 2d 629, 636 (E.D. Ky. 2012)). While breach of this covenant is "not an independent cause of action[,]" alleging "a general breach of contract claim does not preclude [a plaintiff] from alleging a separate claim arising from the alleged breach of the covenant of good faith and fair dealing." *Morris*, 497 F. Supp. 3d at 288 (citations omitted).

There is no such claim, however, where a party acts "according to the express terms of a contract for which it bargained." *Id.* at 289 (quoting *Epps Chevrolet Co. v. Nissan N. Am. Inc.*, 99 F. Supp. 3d 692, 703 (E.D. Ky. 2015)); *Farmers Bank & Tr. Co. of Georgetown v. Wilmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005) ("[The] implied covenant of good faith and fair dealing does not prevent a party from exercising its contractual rights."). Accordingly, courts have held that "the

implied covenant of good faith and fair dealing will not prevent a party from terminating a contract at-will when the contract so provides." *Crump v. State Farm Mut. Auto. Ins. Co.*, No. 5:21-CV-229-DCR, 2021 WL 5450448, at *8 (E.D. Ky. Nov. 22, 2021) (citations omitted); *Hutson, Inc. v. Windsor*, No. 5:12-CV-00191-GNS-LLK, 2015 WL 4133670, at *4 (W.D. Ky. July 8, 2015) (implied covenant of good faith and fair dealing did not apply where employment was "at-will"); *Wells v. Huish Detergents, Inc.*, 19 F. App'x 168, 178 (6th Cir. 2001) ("Kentucky law does not recognize a claim of breach of the covenant of good faith and fair dealing in the employment context." (citation omitted)); *Darby v. Gordon Food Servs., Inc.*, No. 3:11-CV-00646-DJH, 2015 WL 3622529, at *11 (W.D. Ky. June 9, 2015) ("When an individual is employed at-will, there is no covenant of good faith and fair dealing." (citations omitted)).

Because Johnson has not alleged facts beyond the mere creation and termination of an at-will employment relationship, she has not stated a facially plausible claim for breach of contract based on an implied covenant of good faith and fair dealing. Both Defendants' motions to dismiss are therefore granted as to Count V as well, and this claim too is dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motions to Dismiss (DN 10, 12) are **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**.

2. Defendant's Motion to Strike (DN 22) is **DENIED AS MOOT**.

3. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge**
**United States District Court**
October 20, 2026

cc: counsel of record